

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 NOV 25  A 10: 14

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

JOHN H. KITCHINGS, JR.
2426 Hyannis Lane
Crofton, Maryland 21114

            Plaintiff,

    v.

INTEGRAL CONSULTING SERVICES,
INC., a Maryland corporation
2101 Gaither Road, Suite 410
Rockville, Maryland 20850

ABHAI JOHRI
2101 Gaither Road
Rockville, Maryland 20850; and

RENU JOHRI.

Serve: Renu Johri (Registered Agent)
2101 Gaither Road, Suite 410
Rockville, Maryland 20840;

            Defendants.

Case No.:

TJS  **19 CV3374**

**COMPLAINT FOR EQUITABLE
RELIEF, PUNITIVE DAMAGES,
AND FURTHER RELIEF AS
DEEMED JUST**

**JURY TRIAL DEMANDED**

Date Action filed:  11/25/2019

Date set for trial:

## I. NATURE OF THE CASE

1. Plaintiff, John H. Kitchings, Jr., brings this action against Integral Consulting Services, Inc. (Integral), Mr. Abhai Johri, and Mrs. Renu Johri (hereinafter referred to as the "Defendants)," for violations of various federal statutes namely the Family Medical Leave Act (FMLA), 29 U.S.C. Sec. 2601 et seq., the Americans with Disabilities Act (ADA) 42 U.S.C. Sec. 1213(1), the Rehabilitation Act, 29 U.S.C. Sec. 701 et seq., Title VII of the Civil Rights Act of 1964, as amended (Title VII) 42 U.S.C. Sec. 1981a, and the Maryland Flexible Leave Act (MFLA) with claims in excess of $75,000.00 exclusive of fees and costs.

2. This Court has jurisdiction to hear these claims pursuant to 28 U.S.C. Sec. 1331.

3.  Plaintiff is an individual and also was an "eligible employee," within the meaning of FMLA at all times relevant to this Complaint.

4.  Defendants are an "employer," within the meaning of FMLA, at all times relevant to this Complaint.

5.  Defendants are all  engaged in commerce or in industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

6.  At the time of the incidents relevant hereto, Plaintiff was employed by Defendants at its business location in Rockville, Maryland for about 6.5 years.

7.   On January 20, 2018, Plaintiff suffered critical injuries in a trip and fall accident at a Bethesda restaurant resulting in a concussion, acute right knee sprain, acute neck and lumbar sprain, and a resulting right knee laceration requiring 15 surgical staples to close the wound. Plaintiff tripped over an arrangement of chairs placed outside the men's room in a dark hallway with no safety cone or tape notice for the patron's exiting the men's room.

8.  Immediately following the accident, Plaintiff was transported by ambulance to Suburban Hospital in Bethesda, Maryland.  He was diagnosed with a severe concussion, acute knee laceration, and acute muscle strain to the right knee, back, and lumbar region of the body.

9.  Plaintiff required 4 weeks with the surgical staples in the right knee before Suburban Hospital Emergency Physicians could be remove them due to the severity of the swelling and bleeding associated with the wound.  Plaintiff split his knee open upon impact with the concrete floor during the fall.

10.  After the accident, Plaintiff visited both his primary care physician, Southern Maryland Medical Group , and a local Maryland orthopedic surgeon, Dr. Hamid Quraishi a 50

year practicing orthopedic surgeon for removal of the surgical staples but they both requested

Plaintiff return to Suburban Hospital for removal.

11.  Plaintiff returned to Suburban Hospital a little after 4 weeks after the accident for

removal of the surgical staples which caused knee hyperextension, knee atrophy, and knee

locking and giving out after standing for too long.

12.  On January 21, 2018, the Plaintiff requested the reasonable accommodation of

working from home  from his direct supervisor , Mr. Abhai Johri, Integral's co-owner and

Executive Vice President,  based upon the Plaintiff's period of disability resulting from the trip

and fall accident.  Mrs. Renu Johri is the direct supervisor directing the actions of  Ms. Terrie

Ney, the Director of Integral's Human Resources Department.  Plaintiff asks this Honorable

Court to pierce the corporate veil against the owners of Integral in their joint, personal, and

individual capacities for their direct guidance of Ms. Ney involving malicious, wanton, and

retaliatory conduct.

13.   On January 22, 2018, Mr. Johri granted the Plaintiff's request for the work from

home reasonable accommodation during his period of disability .

14.  Defendants never gave Plaintiff a FMLA rights notice rights after the Plaintiff

reported the injury/disability of January 20, 2018 to Mr. Johri.

15.  Plaintiff was employed as Integral's Director of Contracts.

16.  In the meantime, Plaintiff stayed in constant contact with work for close to 2 months

performing job duties at home without any performance complaints.

17.  On January 25, 2018,  the Plaintiff's knee saddled with 15 surgical staples but Mr.

Johri requested that the Plaintiff physically attend a breach of contract settlement civil hearing in

the case of *Techligent, Inc. v. Integral Consulting Svcs., Inc.*, Case No.  430419V, Montgomery County  Circuit Court.

18.  Plaintiff rejected the request to physically travel to said court settlement conference with surgical staples in his knee to the anger and to the dismay of Mr. Johri who remarked afterwards that: "he and the company would have done better in the settlement and would have paid less money out to the plaintiff if the you (Plaintiff) was in attendance".

19.  On January 31, 2018, a second occasion, again with staples embedded, Mr. Johri requested that the Plaintiff attend a U.S. Department of State, Passport Printer Contract Kick-off Meeting which the Plaintiff also rejected angering  Mr. Johri who remarked that "you (Plaintiff) had worked on the proposal effort for 3 years" and that he thought "you (Plaintiff) would care enough to attend the kick-off meeting" .

20.  On a third occasion, while working from home, Mr. Johri requested that the Plaintiff come into the office for a face -to- face contract negotiation session with a State Department passport printer subcontractor that the Plaintiff felt pressured to accommodate after arranging transportation through friends and Plaintiff's mother.

21.  On or about, March 15, 2018, for the very first time, the Plaintiff heard from Ms. Terrie Ney, Integral's Director of Human Resources, via mobile phone, asking the Plaintiff to return to work at the direction of Mr. Johri because "the company only allows 60 days for maternal leave disability and you (Plaintiff) are coming up on 60 days".

22.  On March 15, 2018, at no prior time had Defendants given any written notice to the Plaintiff of his FMLA rights.

23.  In response to Ms. Ney's call,  Plaintiff responded that he "would return to the office when either his medical treatment concludes" or when "the orthopedic surgeon releases the Plaintiff to return to the office from his disability".

24.  On March 15, 2018, Ms. Ney  excessively scrutinized the previously submitted Plaintiff's physician disability slips for the first time informing the Plaintiff that they were now insufficient, after the fact,  for the Plaintiff to perform his duties further based upon the doctor's language in the Plaintiff's disability note.

25.  The Plaintiff  visited the doctor on  3 separate occasions seeking doctor clarification for Ms. Net over the next 2 days seeking a clarification of Plaintiffs'  disability notes.

26.  On March 19, 2018, and Defendants' third rejection of the Plaintiff's disability notes, Plaintiff was given the verbal ultimatum, via mobile phone by Ms. Ney, to either take short term disability or FMLA leave, without pay. because the Plaintiff was unable to perform his duties further based upon Defendants' interpretation of the Plaintiff's disability.

27.  On March 20, 2018, the revised Dr. Quraishi disability note was submitted to Ms. Ney for a 3rd time, for her clarification purposes, which Ms. Ney  also rejected.

28.  On March 21, 2018, the Plaintiff used accrued paid time off (PTO) for the day to meet with counsel and Plaintiff requested the short term disability insurance carrier information from Ms. Ney for the very first time since the January 20, 2018 date of loss.

29.  On March 22, 2018,  Plaintiff again used PTO for the day coupled with communicating to Ms. Ney, via email,  that he prefers short term disability at 60% of the Plaintiff's salary as opposed to taking FMLA leave without pay.

30.  On March 26, 2018,  in Defendants' first FMLA written notice  email communication from Ms. Ney,  Defendants informed the Plaintiff that his "FMLA leave was

effective on **February 20, 2018** as it runs concurrent with any/all leave taken in connection with your (Plaintiff) disability".

31. Also in the March 26, 2018 email, Ms. Ney explained further that the re-examination of the previously submitted Kitchings disability notes caused her decision regarding the February 20, 2018 FMLA leave effective date.

32. Interesting enough, the Defendants represented under oath to the U.S. Equal Employment Opportunity Commission (EEOC), the Montgomery County Office of Human Rights (OHR) agency, and the Maryland Unemployment Insurance agency that the Plaintiff's effective FMLA date was **January 21, 2018.**

33. In the March 26, 2018 Ney email, she also stated that: "all days or hours you (Plaintiff) have not worked since February 20, 2018 in connection with your injury, should be indicated on your (Plaintiff) time sheet under the FMLA charge code".

34. The Ney FMLA email of March 26, 2018 also does not meet the legal FMLA notice compliance requirements for employers.

35. The Plaintiff worked from home from January 22, 2018 until March 26, 2018 using his accrued PTO leave until the last day of the March 2018 pay period.

36. Plaintiff never received any notices from the Defendants that the time clock on his FMLA leave had begun to run, or that it was being applied retroactively in combination with his paid time off.

37. Plaintiff reasonably believed that his FMLA 12-week period would not begin to run earlier than April 2, 2018 (The date that all of the Plaintiff's PTO had been expended) -which would result in FMLA protected leave until June 7, 2010. Until then, Plaintiff believed that he was using his paid time off vacation time for his absence.

38.  The Defendants never informed Plaintiff that his FMLA leave was being applied retroactively to January 21, 2018.

39.  During his recovery, Plaintiff was regularly updated as to the internal operations of the Defendants by a fellow co-worker.

40.  Sometime after April 2, 2018, Integral hired a Black female Contracts Manager to assume Plaintiff's contract management duties but she was terminated from employment after just a few weeks of employment due to performance issues.

41.  On May 2, 2018, Plaintiff filed charges of ADA and Title VII discrimination against the Defendants for removing his reasonable accommodation to work from home during his period of disability.

42.  On June 14, 2018, at 2:45p.m. EST , after a call from a fellow co-worker during the time that the Plaintiff's position with Defendants was still vacant the Plaintiff sent an email e-mail notice to Ms. Ney of his intent to return to the office for full duty.

43.  On June 18, 2018, via e-mail, Plaintiff received a response from Ms. Ney that his "FMLA benefits expired on June 12, 2018".  Ms. Ney stated further: "At this time, we can no longer hold your position as we need to have a full time resource to cover contracts management and administration."

44.  The attached Integral termination letter was dated June 14, 2018, U.S. Post Office Certified Mail No. 7017 1000 0001 1610 0652, the letter stated further that: "We are terminating your employment effective today, June 14, 2018."   44.  After receipt of the June 18, 2018 letter, Plaintiff noticed the certified mail termination letter was mailed out from a Gaithersburg, Maryland Post Office, while Defendants' office is physically located in Rockville, Maryland.

45. The Defendants' mailing of the termination letter in a different town of doing business (Gaithersburg v. Rockville) evidences the fact that the Plaintiff's termination letter was mailed, after the regular noon Rockville office mail pick-up hours; and after the 2:45p.m. EST return notice from the Plaintiff.

46. On June 14, 2018, Plaintiff was willing to return to work and could have returned to work.

47. On or about June 18, 2018, a fellow Integral co-worker informed the Plaintiff that his Director of Contracts position was still vacant at Integral as the Defendants had to retract/rescind a six-figure offer of employment before full consummation to a Ms. Cheryl Thomas of Gaithersburg, Maryland (a former co-worker of both the Plaintiff and Mr. Johri at Lockheed Martin, Inc.) because Ms. Thomas' resume employment background references could not be verified by the Defendants.

48. On July 20, 2018, the State of Maryland, Department of Labor, Licensing and Regulation, Division of Unemployment Insurance, Notice of Benefit Determination (DOL) unit informed the Plaintiff, in writing, that his unemployment benefits are denied because the Defendants certified to DOL that the Plaintiff "*voluntarily quit employment*".

49. This complaint seeks equitable relief, front pay, back pay, reinstatement, punitive damages, and further relief as this Honorable Court deems appropriate for the Defendants, a federal government contractors, willfully flaunting federal law.

50. This complaint additionally seeks damages for retaliation, ADA, Rehabilitation Act, Title VII, and hostile work environment.

51. Finally, this complaint seeks punitive damages for Defendants' malicious and wanton conduct emanating from Defendants' failure to adequately provide a FMLA notice that

complies with federal law. Plaintiff reported directly to Mr. Johri and Ms. Ney reported directly to Mrs. Johri.

52.  The injury and harm to Plaintiff herein was compounded by the fact that Plaintiff's period of disability was ongoing at the time that Integral retaliated against the Plaintiff. Acquiescing in their acknowledgement of the level of harm that Defendants caused to the Plaintiff, the Defendants' termination letter flippantly closed by wishing the Plaintiff "continued progress in your recovery".

## II. JURISDICTION and PARTIES

53.  Defendants are U.S. Government contractors, with security clearances to perform top secret work for the United States of America. incorporated and all residing in Montgomery County, Maryland,  deriving more than $70M annually in classified and unclassified government contract proceeds  from the federal treasury.  Defendants all do  business with its headquarters in Rockville, Maryland.  Mr. Johri and Mrs. Johri, co-owners of Integral, are also residents of Rockville, Maryland, naturalized United States citizens, originally from India (Mr.) and Pakistan (Mrs.) respectively.   All events giving rise to this incident took place in Rockville, Maryland. Therefore, jurisdiction of this Honorable Court is proper.

## III. FACTUAL ALLEGATIONS

54. Plaintiff realleges paragraphs 1-53 above.

55.  Defendants failed to notify Plaintiff of his FMLA rights. (825.300-.301). In addition, *but for* Defendants' failure to send out a FMLA eligibility notice to the Plaintiff within 5 days after January 21, 2018, this action would not be necessary.  Integral has shown both incompetence and dysfunction in its Human Resources function resulting in monetary and physical damages to the Plaintiff.

56.  Defendants failed to notify the Plaintiff that leave counted towards 12-week FMLA entitlement.  (825.208(b)(1)-(b)(2).  The discrepancy with the Plaintiff's lack of FMLA notice coupled with the Plaintiff's removal of his work for home reasonable accommodation, and Plaintiff's termination of employment just weeks after the EEOC charge was filed, proves the intent necessary for misrepresentation involved with the termination of employment on June 12 2018.   The intentional misrepresentations made to DOL were wanton, malicious, and willfully false when made by the  Defendants. It was a cover-up attempt to hide Plaintiff's discriminatory FMLA treatment of the Plaintiff by the Defendants.

57.  Defendants wrongfully counted FMLA leave against Integral's absentee policy for disciplinary purposes.  825.220( c).  The Defendants' response to EEOC, DOL,  and OHR investigators was allegedly a Plaintiff "FMLA start date of January 21, 2018" with Plaintiff using a "March 21, 2018 short term disability concurrent with FMLA leave. For the first 2 months after the injury, the Plaintiff worked from home where timesheets show full-time work without leave signed and approved by Mr. Johri. It was patently false by the Defendants to represent a retroactive date wrongfully concluding to DOL that Plaintiff voluntarily quit and representing to the Plaintiff that his "FMLA benefits expired on June 12, 2018" and that "we can no longer hold your position as we need to have a full time resource to cover contracts management and administration".  Plaintiff's wrongful termination and his willfully discriminatory termination of employment constitutes disciplinary action.

58.  Defendants took disciplinary action against Plaintiff for using FMLA.  825.220(c ). Defendants therefore discriminatorily omitted FMLA notices required by federal law in its employment practices.

59.   Defendants failed to handle questions about the validity of a medical certification, from Plaintiff's physicians, as set forth in the FMLA regulations and guidelines.  825.307.

60.   Defendants failed to reinstate Plaintiff to his same or an equivalent position and Defendants wrongfully terminated Plaintiff during and/or at the conclusion of FMLA leave.  As a direct result of Defendants' willful discriminatory actions and the DOL misrepresentations  as a whole, Plaintiff has been maliciously harmed by the federal transgressions in the Defendants' employment practices.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Family Medical Leave Act

61.  Plaintiff realleges paragraphs 1-60 above.

62.  The FMLA provides employees with the right to be reinstated to the same or an equivalent position after taking protected leave.

63.  The  Defendants willfully violated the FMLA by refusing to reinstate Plaintiff to his prior position or to an equivalent position with substantially similar work and compensation upon Plaintiff's return to work, and termination Plaintiff.

64.  Defendants intentionally interfered with, restrained, and/or denied Plaintiff's exercise of his rights under FMLA by refusing his attempt to be reinstated to his full time position or reasonably equivalent full time position.

65. Plaintiff's FMLA period begins to run and end amounts to deception by concealment; thereby making it impossible for Plaintiff to know that  Defendants would be calculating his FMLA expiration time period as anything other than prior to April 2, 2018.  This is compounded by the fact that the Plaintiff reasonably believed that his working from home for 2 months after

the accident didn't amount to usage of FMLA leave because Defendants never advised Plaintiff that his FMLA leave would begin to run retroactively. Plaintiff also reasonably believed that the expiration of his PTO leave used until March 31, 2018 would not start the clock on the tolling of the 90 FMLA period.

66.  Because  Defendants did not advise Plaintiff that his FMLA time period would begin to run prior, Plaintiff's belief that his PTO would be utilized while his FMLA eligibility was analyzed by the  Defendants was reasonable and  Defendants are estopped from now claiming otherwise.

67.  The Defendants' failure or refusal to advise Plaintiff that his FMLA starting leave date was being applied retroactively interfered with Plaintiff's rights to FMLA leave.

**SECOND CAUSE OF ACTION**

**Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act**

**Amendments Act of 2008 (ADAAA), with respect to reasonable accommodation.**

68. Plaintiff realleges paragraphs 1-67.

69. Title I of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

70.  Defendants as a federal government contractor is a public entity subject to Title I of the ADA, 42 U.S.C. Sec. 12131.

71.  Defendants repeatedly failed to make reasonable modifications necessary to avoid discrimination against individuals with physical disabilities.

72. All administrative remedies have been exhausted by the Plaintiff and that securing compliance from the Defendants cannot be achieved without a court order.

73. Defendants' actions constitute discrimination in violation of Title I of the ADA, 42 U.S.C. Sec. 12132, and its implementing regulations, 28 C.F.R. 35.

## THIRD CAUSE OF ACTION

### Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

74. Plaintiff realleges paragraphs 1-73.

75. The Defendants' conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.  The stated reasons for Defendants' conduct were not the true reasons, but instead were pretext to hide the Defendants' discriminatory animus.

76. Defendants treated Caucasian male, and former Integral employee,  Terry Schmaltz different than Plaintiff when Mr. Schmaltz sought a reasonable accommodation from Integral over a multi-year period before expiring from terminal cancer at an out of state treatment facility in Boston, Massachusetts.

77. Defendants also treated Asian female, Mrs. Jessica Tran, more favorably granting a reasonable accommodation to Ms. Tran during her maternity leave.  Defendants also allowed another Asian female employee, Ms. Bincy Moses, to work from home for years, after her period of disability resulting from a pregnancy hernia.  (The  corporate entity  are also owned by Asians. Plaintiff to the contrary is a  Black male.)

## FOURTH CAUSE OF ACTION

### Reprisal for Engaging in Protected Activities

78. The foregoing paragraphs are realleged and incorporated herein.

79. The Defendants' conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and the ADA. The stated reasons for the Defendants' conduct were not the true reasons, but instead were pretext to hide the Defendants' retaliatory animus.

## FIFTH CAUSE OF ACTION

### Violation of the Rehabilitation Act of 1973, 29 USC Sec. 710 et seq.

80. Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

81. Integral discriminated against Mr. Kitchings by denying him reasonable accommodation for his disabilities, including right knee injury and concussion protocol, in violation of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 *et seq*., as amended.

82. Integral has conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of Mr. Kitchings.

83. By reason of Integral's discrimination, Mr. Kitchings is entitled to all legal and equitable remedies available under the Rehabilitation Act.

84. Attorney's fees should be awarded under 29 U.S.C. Sec. 794(a)(1).

## SIXTH CAUSE OF ACTION

### Hostile and Abusive Working Environment

85. The foregoing paragraphs are realleged and incorporated by reference herein.

86. The Defendants' conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehabilitation Act, and the ADA. The stated reasons for the Defendants' conduct were not true reasons, but instead were pretext to hide the Defendants' discriminatory animus.

**Punitive Damages**

87. Plaintiff adopts and realleges paragraphs 1-86 as though fully set forth herein.

88. The conduct of Defendants described above is outrageous. Defendants' conduct demonstrates a reckless disregard for the employment rights of Plaintiff and a conscious disregard for Plaintiff's implied contract employment rights. The acts and omissions described above were willful and performed with actual or implied malice. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

89. As a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions of Defendants, Plaintiff sustained injuries of a personal and pecuniary nature, including present continued right knee pain.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for a judgment against Defendants for:

1. Equitable relief in the form of reinstatement or front pay, as this Honorable Court deems appropriate, pursuant to 29 U.S.C.A. Sec. 2617(a)(1)(B);

2. Compensatory damages to be paid by Defendants, according to proof at trial;

3. Punitive damages as this Honorable Court deems appropriate;

4. The sum of $300,000.00 in compensatory damages suffered because of discrimination and retaliation;

5. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. Sec. 2617(a)(1)(A)(iii);

6. Costs and attorneys fees of this lawsuit, with interest; and

7. Any other relief as this Honorable Court deems appropriate.

1

2    Dated: November 25, 2018                              JOHN H. KITCHINGS, JR.

3

4

5                                                          John H. Kitchings, Jr., Esq.

6                                                          Pro se  Plaintiff
                                                           2426 Hyannis Lane
7                                                          Crofton, Maryland 21114
                                                           johnkitchings@aol.com
8                                                          Home (301-261-0681)
                                                           Mobile (202-904-6804)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28